# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER W. GHATTAS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO:** |
| | : | |
| **BLUE CROSS BLUE SHIELD** | : | |
| **HEALTHCARE PLAN OF** | : | |
| **GEORGIA, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff CHRISTOPHER W. GHATTAS files this Complaint for Damages against Defendant BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC. showing this Court as follows:

## Parties, Jurisdiction and Venue

1.     Plaintiff CHRISTOPHER W. GHATTAS ("Mr. Ghattas") is a resident of Fulton County, Georgia.

2.     Defendant BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC. is a Georgia corporation who may be served through its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046 in Gwinnett County.

3.     Mr. Ghattas is insured by Defendant BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC. through a group health insurance policy provided by Mr. Ghattas's employer, Karna, LLC. The group health insurance coverage is a fully-insured plan governed by a Group Master Contract ("the Plan") issued and administered in this district.

4.     The group health insurance plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

5.     Mr. Ghattas seeks to recover benefits and to enforce rights under section 1132(a)(1)(B) of title 29 of the United States Code.

6.     Jurisdiction and venue are proper in this Court.

## Factual Allegations

7.     Plaintiff is an otherwise healthy thirty-four year old male who was diagnosed with cancer in early 2020.

8.     Mr. Ghattas's cancer is a primary (non-metastatic) slow growing tumor located at the base of the brain stem.

9.     Mr. Ghattas's cancer is categorized as a central nervous system ("CNS") tumor.

10.     On April 4, 2020, Mr. Ghattas was evaluated by Hui-Kuo G. Shu, M.D., Ph.D. ("Dr. Shu"), a radiation oncologist and Professor at Emory University

School of Medicine.

11.    "Given [Mr. Ghattas's] young age, brainstem location with crucial neighboring structures, optimistic prognosis, and relevant consideration of lifetime risk for secondary malignancy," Dr. Shu recommended proton beam therapy.

12.    Proton Beam Therapy ("PBT") is a type of radiation therapy.

13.    In PBT, "positively charged subatomic particles (protons) are targeted to a specific tissue mass." (AIM Specialty Health, Clinical Appropriateness Guidelines, Radiation Oncology, Appropriate Use Criteria:  Proton Beam Therapy, attached as Exhibit A at p. 6).

14.    "Protons behave differently than x-rays or photons in that they have a low energy deposition rate as they enter the body, followed by a steep increased energy deposition when they reach their target."  (*Id.*)

15.    "Compared to x-ray treatment, surrounding healthy tissue generally receives less radiation" with PBT.  (*Id.*)

16.    AIM Specialty Health is a wholly owned subsidiary of Anthem, Inc.

17.    Defendant is a wholly owned subsidiary of Anthem, Inc.

18.    AIM Specialty Health provides precertification review services, including issuing clinical appropriateness guidelines, for Defendant.

19.    Dr. Shu's request for Mr. Ghattas to receive PBT therapy was

submitted to Defendant on April 14, 2020.  (Blue Cross Blue Shield ("BCBS") Order Request Summary, attached as Exhibit B).

20.     Dr. Shu's PBT order request includes Dr. Shu's April 4, 2020 office note and Dr. Shu's PBT treatment plan.  (*Id.*)

21.     Dr. Shu's treatment plan calls for the PBT to be performed at Emory Proton Therapy Center.

22.     Defendant processed Dr. Shu's proton therapy treatment plan through AIM Specialty Health.  (AIM Specialty Health Order Request Summary, attached as Exhibit C).

23.     At 12:34 p.m. on April 14, 2020, Defendant processed Dr. Shu's PBT treatment plan through AIM Specialty Health.  (*Id.* at p. 8).

24.     At 1:25 p.m. on April 14, 2020, less than one hour after receiving the treatment plan from Dr. Shu, AIM Specialty Health, acting on behalf of Defendant, denied PBT for Mr. Ghattas.  (*Id.* at p. 6).

25.     The April 14, 2020 denial notes that Mr. Ghattas has a CNS tumor. The April 14, 2020 denial notes that PBT "can be used if other types of radiation do not lower the risk of damage to the critical structure.  Your doctor did not tell us that other types of radiation do not lower your risk."  (*Id.*)

26.     The April 14, 2020 denial specifically relied on AIM Specialty

Health, Clinical Appropriateness Guidelines, Radiation Oncology, Appropriate Use Criteria:  Proton Beam Therapy ("AIM's PBT Guideline") (Ex. A).

27.     On April 29, 2020, Dr. Shu filed a first-level appeal on behalf of Mr. Ghattas.  (April 29, 2020 First-Level Appeal from Dr. Shu, attached as Exhibit D).

28.     Dr. Shu's April 29, 2020 Appeal notes that Mr. Ghattas's diagnosis is a "low grade glioma of the medulla (C71.7)."  (Ex. D at p. 1).

29.     Dr. Shu's April 29, 2020 Appeal notes the normal healthy structures that are at risk for Mr. Ghattas' radiation as "normal brain, other surrounding normal tissues (including pharyngeal wall)."  (*Id.*)

30.     Dr. Shu's April 29, 2020 Appeal states "Particularly with the patient's relative young age, we felt that proton therapy would be optimal for treating the tumor while minimizing dosing to surrounding normal tissues."  (*Id.* at p. 2).

31.     Dr. Shu's April 29, 2020 Appeal further states:

In the figures below, you will find the images from Mr. Ghattas' comparative treatment planning and a comparative dose volume histogram.  As is clearly illustrated by the images, the low dose spray to the surrounding normal tissues is significantly reduced with proton therapy.  In the particular, the pharyngeal wall is expected to be exposed to a substantially lower dose with protons compared with the best VMAT plan.  This will reduce acute side effects in the patient and also lower the long-term risk of secondary malignancies, something that is of greater importance in this young patient who we expect to have quite a good prognosis overall from his low-grade glioma.

(*Id.*)

32.    Dr. Shu's April 29, 2020 Appeal letter references the 2014 update to

the American Society for Radiation Oncology's ("ASTRO"), an evidence-based

physician specialty society, Model Policy insurance coverage guidelines ("ASTRO

Model Policy") to support the position that "ASTRO supports [] coverage of

proton therapy for adult brain / CNS spinal irradiation . . . Proton beam therapy for

brain / CNS indications is considered medically necessary by Medicare since

1997." (*Id.* at p. 3).

33.    In fact, the most recent 2017 update to the ASTRO Model Policy

identifies "[m]alignant and benign primary CNS tumors" as one of the "disease

sites that frequently support the use of PBT" because PBT is "considered

reasonable in instances where sparing the surrounding normal tissue cannot be

adequately achieved with photon-based radiotherapy and is of added clinical

benefit to the patient." (2017 ASTRO Proton Beam Therapy Model Policy,

attached as Exhibit E at pp. 4-5).

34.    Defendant denied Mr. Ghattas's first-level appeal on May 13, 2020.

(BCBS May 13, 2020 Denial, attached as Exhibit F).

35.    Defendant's May 13, 2020 denial states that "Medical studies do not

show that this treatment works as well as other treatments for this type of cancer.

For this reason we believe that proton beam radiation therapy is not medically necessary for you. We used AIM Specialty Health Clinical Appropriateness Guidelines to make this decision." (*Id.* at p. 3).

36.     Defendant's May 13, 2020 denial contradicts AIM's PBT Guideline.

37.     AIM's PBT Guideline states that PBT is medically necessary for CNS tumors (specifically including primary low grade gliomas) "[w]hen adjacent to critical structures such as the optic nerve, brain stem, or spinal cord **AND** [w]hen other standard radiation techniques such as IMRT or standard stereotactic modalities would not sufficiently reduce the risk of radiation damage to the critical structure." (Ex. A at p. 12).

38.     AIM's PBT Guideline states that PBT is "not medically necessary" for most cancers, including breast, esophageal, gastric, gynecological, hepatobiliary, lung, lymphoma, pancreatic and prostate cancers. (*Id.*)

39.     CNS tumors are one of the few types of cancers for which PBT **is** considered medically necessary by AIM's PBT Guideline.

40.     Mr. Ghattas's "low grade glioma of the medulla (C71.7)" is categorized by AIM's PBT Guideline as a CNS tumor. (Ex. A at p. 13).

41.     There is no doubt that Mr. Ghattas's CNS tumor is adjacent to the brain stem and therefore Mr. Ghattas meets the first criterion for PBT.

42.     Furthermore, Dr. Shu's April 29, 2020 Appeal proves that standard radiation techniques would not sufficiently reduce the risk of radiation damage to critical structures and therefore Mr. Ghattas satisfies the second and final criterion for PBT to qualify as "medically necessary."

43.     Dr. Shu's April 29, 2020 Appeal shows that the areas of Mr. Ghattas's brain that would receive radiation are substantially larger for traditional photon radiation compared to PBT.

44.     Dr. Shu's April 29, 2020 Appeal reviews medical studies that prove standard radiation therapy significantly increases the risk of damage to surrounding critical structures in cases of CNS tumors compared with PBT.

45.     Furthermore, Dr. Shu's April 29, 2020 Appeal proves that traditional photon radiation for CNS tumors significantly increases the risk of secondary malignancy compared to PBT.

46.     On May 22, 2020, Dr. Shu filed a second-level appeal on behalf of Mr. Ghattas.  (Dr. Shu's May 22, 2020 Appeal, attached as Exhibit G).  In the appeal, Dr. Shu requests "that a radiation oncologist, specifically one with experience in treating patients with both protons and photons/X-rays, review this case in appeal."

47.     Dr. Shu's May 22, 2020 Appeal compares radiation exposure to

surrounding normal tissues from traditional radiation and PBT for Mr. Ghattas's CNS tumor.  The mean radiation dose to the surrounding healthy brain cells and other healthy critical structures for Mr. Ghattas's CNS tumor from X-ray/photon therapy is 7.61 Gy (radiation energy) compared to 2.86 Gy with PBT. This translates to a "2.66-fold greater risk of developing a secondary cancer" for traditional radiation compared to PBT.

48.     On June 9, 2020, Defendant denied Dr. Shu's May 22, 2020 second-level appeal on behalf of Mr. Ghattas.  (Defendant's June 9, 2020 Denial of Second-Level Appeal, attached as Exhibit H).

49.     The medical reviewer of Dr. Shu's May 22, 2020 Appeal was not a radiation oncologist but rather an internist.

50.     The June 9, 2020 denial does not provide a reason for the denial other than "Review of your case has determined that PBT is not medically necessary." (Ex. H at p. 2).

51.     Defendant's June 9, 2020 denial states that "This is our final decision. Your appeal rights with us are exhausted."  (*Id.* at p. 3).

52.     Plaintiff exhausted his administrative appeal rights under ERISA and thereby brings this action.

## COUNT I

### DENIAL OF PLAN BENEFITS UNDER ERISA

53.     Plaintiff refers to and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54.     At all times relevant, Plaintiff was covered under the Plan.

55.     The PBT requested by Dr. Shu meets the terms of the Plan as appropriate and medically necessary treatment.

56.     Defendant denied Mr. Ghattas's PBT therapy on the basis that PBT is not medically necessary for Mr. Ghattas's CNS tumor.

57.     To determine whether Plaintiff's request for PBT is medically necessary, Defendant relies on AIM's PBT Guideline.  (Ex. A).

58.     Mr. Ghattas has a "low grade glioma of the medulla (C71.7)," which is categorized as a CNS tumor by AIM's PBT Guideline.  (Ex. A at p. 13).

59.     AIM's PBT Guideline provides that PBT is medically necessary for a CNS tumor "[w]hen adjacent to critical structures such as the optic nerve, brain stem, or spinal cord **AND** [w]hen other standard radiation techniques such as IMRT or standard stereotactic modalities would not sufficiently reduce the risk of radiation damage to the critical structure."  (Ex. A at p. 12).

60.    It is undisputed that Mr. Ghattas's CNS tumor is adjacent to the brain stem and thus satisfies the first criterion to qualify as medically necessary.

61.    Furthermore, Plaintiff through Dr. Shu has overwhelmingly proven that traditional x-ray radiation would not sufficiently reduce the risk of radiation damage to Mr. Ghattas's brain and other critical structures and thus satisfies the second and final criterion to qualify as medically necessary by AIM's PBT Guideline.

62.    AIM's PBT Guideline acknowledges that "Protons behave differently than x-rays or photons in that they have a low energy deposition rate as they enter the body, followed by a steep increased energy deposition when they reach their target." (Ex. A at p. 6).

63.    AIM's PBT Guideline acknowledges that "Compared to x-ray treatment, surrounding healthy tissue generally receives less radiation" than with PBT. (*Id.*)

64.    Defendant's first denial took less than one hour to consider, evaluate and deny. (Ex. C at pp. 6-8).

65.    At 12:34 p.m. on April 14, 2020, Defendant transferred Dr. Shu's PBT treatment plan to AIM Specialty Health. (*Id.* at p. 8).

66.    At 1:25 p.m. on April 14, 2020, less than one hour after receiving the

treatment plan from Dr. Shu, AIM Specialty Health denied PBT for Mr. Ghattas. (*Id.* at p. 6).

67.    Defendant's April 14, 2020 denial notes that PBT "can be used if other types of radiation do not lower the risk of damage to the critical structure. Your doctor did not tell us that other types of radiation do not lower your risk." (*Id.*)

68.    In response to Defendant's April 14, 2020 denial, Dr. Shu filed the April 29, 2020 First-Level Appeal on behalf of Plaintiff showing Defendant that traditional radiation significantly increases the risk of tissue damage to Mr. Ghattas's brain cells.  (Ex. D).

69.    Dr. Shu's April 29, 2020 Appeal shows the areas of Mr. Ghattas's brain that would receive excessive radiation damage from standard photon radiation.

70.    Dr. Shu's April 29, 2020 Appeal reviews the medical studies that show standard radiation therapy significantly increases the risk of damage to surrounding critical structures in cases of CNS tumors compared with PBT.

71.    Furthermore, Dr. Shu's April 29, 2020 Appeal shows standard radiation for CNS tumors sufficiently increases the risk of secondary malignancy compared to PBT.

72.    Defendant denied Plaintiff's first-level appeal on the basis that "Medical studies do not show that this treatment works as well as other treatments for this type of cancer.  For this reason we believe that proton beam radiation therapy is not medically necessary for you. We used AIM Specialty Health Clinical Appropriateness Guidelines to make this decision." (Ex. F).

73.    Defendant's May 13, 2020 denial contradicts AIM's PBT guideline which provides that PBT is medically necessary for CNS tumors.

74.    After the May 13, 2020 first-level denial from Defendant, Dr. Shu filed a second-level appeal on behalf of Mr. Ghattas.  (May 22, 2020 Second-Level Appeal, Ex. G).

75.    Dr. Shu's May 22, 2020 Appeal compares the radiation exposure from traditional radiation and PBT for Mr. Ghattas's tumor.  The mean radiation dose to Mr. Ghattas's surrounding healthy brain cells and other healthy critical structures from X-ray/photon therapy is 7.61 Gy (radiation energy) compared to 2.86 Gy with PBT.  This translates to a "2.66-fold greater risk of developing a secondary cancer" for traditional radiation compared to PBT for Mr. Ghattas's CNS tumor.

76.    On June 9, 2020, Defendant denied Dr. Shu's May 22, 2020 second-level appeal on behalf of Mr. Ghattas. (Ex. H).

77.    The medical reviewer of Dr. Shu's May 22, 2020 Appeal was not a

radiation oncologist but rather an internist.

78. The June 9, 2020 denial does not provide a reason for the denial other than "Review of your case has determined that PBT is not medically necessary." (Ex. H at p. 2).

79. The greater weight of the evidence proves that Defendant ignored Dr. Shu's appeals on behalf of Plaintiff and arbitrarily and capriciously stuck with its denial made within one hour of receipt of Dr. Shu's office note and treatment plan that Defendant would not cover Mr. Ghattas's proton therapy.  (Exs. B and C).

80. Defendant determines eligibility for Plan benefits as well as pays the benefits due under the Plan.

81. Defendant retains any proceeds if premiums exceed payouts under the Plan.

82. Defendant's initial denial of April 14, 2020 acknowledges that that PBT is medically necessary for CNS tumors such as Mr. Ghattas's low grade glioma of the brain stem if "if other types of radiation do not lower the risk of damage to the critical structure."  (Ex. C at p. 6).  Defendant's initial denial of April 14, 2020 states that "Your doctor did not tell us that other types of radiation do not lower your risk."  (*Id.*)

83. Following Defendant's initial denial, Dr. Shu presented overwhelming

medical evidence that standard photon radiation significantly increases risk to Mr. Ghattas, including the destruction of surrounding healthy brain cells and a "2.66-fold greater risk of developing a secondary cancer."

84.     Defendant never rebuts or refutes Dr. Shu's evidence. Rather, Defendant offers curt denials in response to Dr. Shu's first and second appeals on behalf of Plaintiff.

85.     Defendant's curt denials of May 13, 2020 and June 9, 2020 directly contradict its own PBT guideline and as such are arbitrary and inconsistent denials.

86.     Defendant's denial of Plaintiff's first-level appeal states that "Medical studies do not show that this treatment works as well as other treatments for this type of cancer."  This denial rationale directly contracts Defendant's initial denial of April 14, 2020 and directly contracts AIM'S BPT Guideline that CNS tumors such as Mr. Ghattas's low grade glioma of the medulla are appropriate for PBT.

87.     Defendant's denial of Plaintiff's second-level appeal states "Review of your case has determined that PBT is not medically necessary."  Once again, Defendant's denial of Plaintiff's second-level appeal directly contracts Defendant's initial denial of April 14, 2020 and directly contracts AIM'S BPT Guideline that CNS tumors such as Mr. Ghattas's low grade glioma of the medulla are appropriate and medically necessary for PBT.

15

88.     There is nothing in Defendant's administrative record that refutes Dr. Shu's overwhelming evidence that Mr. Ghattas's CNS tumor and the risk presented by treating Mr. Ghattas's tumor with traditional photon radiation meets the criteria for "medically necessary" as established by Defendant's own proton therapy guideline.

89.     Following the denial of Mr. Ghattas's request for medical benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA and the Plan, and performed all duties and obligations required by ERISA and the Plan prior to filing a lawsuit.

90.     As a proximate result of the denial of benefits due Plaintiff, Plaintiff has been irreparably damaged. In order to receive PBT from Emory Proton Therapy Center and Dr. Shu, Plaintiff has incurred significant medical expenses.

91.     Plaintiff seeks payment of health benefits due to him under the Plan plus interest and any further necessary medical expenses for PBT.

## COUNT II

## PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES

92.     Plaintiff refers to and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93.     As a direct and proximate result of Defendant's improper denial of

Plaintiff's PBT, Plaintiff, in pursuing this action, has incurred attorneys' fees and expenses. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendants.

94.     Plaintiff requests that this Court order Defendant to pay all reasonable attorneys' fees and expenses in pursing this action.

Respectfully submitted this 29th day of July, 2020.

/s/ Erik H. Olson
Erik H. Olson
Georgia Bar No. 553098
**The Olson Law Firm, LLC**
6100 Lake Forrest Drive
Suite 570
Atlanta, Georgia 30328
Phone:  (404) 897-1014
Fax:  (404) 255-0183
erikholson@theolsonlawfirm.com

/s/Timothy J. Rozelle [*pro hac vice pending*]
Timothy J. Rozelle
California State Bar No. 298332
**Kantor & Kantor, LLP**
19839 Nordhoff Street
Northridge, California 91324
Phone:  (818) 886-2525
Fax: (818) 350-6272
trozelle@kantorlaw.net

*Attorneys for Plaintiff*